UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**MARGARET COFFMAN,**
        **Plaintiff**

**v.**          **Civil Action Number**
                **3:06CV252-J**

**MICHAEL J. ASTRUE, Commissioner**
  **Of Social Security,**
        **Defendant**

### MEMORANDUM OPINION

This matter is before the Court on plaintiff Margaret Coffman's challenge to the decision of the defendant Commissioner denying her claim to Supplemental Security Income payments . After examining the materials of record, the arguments of the parties and applicable authorities, the Court is of the opinion that the decision should be vacated and this matter remanded for further proceedings.

Ms. Coffman filed her application in October of 2003, alleging that she had been unable to engage in any substantial gainful employment since November of 2000. After a hearing, the Administrative Law Judge ("ALJ") determined that Ms. Coffman suffered from mildly severe depression, but that she retained the residual functional capacity for performing work at all exertional levels.

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003).

1

"Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. N.L.R.B. v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way," and this Court is not permitted to reverse a decision merely because substantial evidence would have supported the contrary decision. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process. Step Two requires the claimant to establish that the alleged disabling impairment is "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921. The term "significant" in this step is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 CFR § 404.1520a(d). The purpose of the second step is to enable the Commissioner to screen out "totally groundless claims." Farris v. Sec'y of HHS, 773 F.2d 85, 89 (6th Cir.1985). The "severity" requirement has been described as a "de minimis hurdle" in the disability determination process. Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as

2

"severe." SSR 96-3p (July 2, 1996).

The ALJ agreed that Ms. Coffman's depression represented a "severe impairment," but he declined to find that her arthritis was a severe impairment. Ms. Coffman argues that substantial evidence fails to support that latter determination. In most cases, the question of whether the ALJ has formally designated an impairment as "severe" is irrelevant, so long as the functional impact of the impairment is evaluated in conjunction with the other impairments. In this case, however, the question takes on a greater significance, given that the ALJ found *no* physical impairment at all; thus, the functional restriction analysis concerned only her mood disturbance disorder. Thus, the ALJ placed no restrictions whatsoever on how long she could stand, how far she could walk, or how much weight she could lift or carry. For the reason set out below, the Court finds that this represented legal error.

In making his determination that her arthritis was non-severe, the ALJ relied primarily on the statements of Dr. Phillips, a non-treating and non-examining physician who reviewed some medical records in January of 2004. Dr. Phillips discussed Dr. Dawson's December 2003 consultative examination (see Tr. 119-120), but concluded that Dr. Dawson's opinion was "not consistent with the reported medical evidence." Tr. 144.

Significantly, however, Dr. Phillips stated that "the only records in the file from her treating sources report of an exam in 07/2002." Tr. 143. By the time of the ALJ's review, additional treating physician records were in the file. The regular treating physicians consistently recorded diagnosis of arthritis, especially in her knees, and treated her accordingly. She was first tried on naproxen. When this failed to relieve her pain, the dosage was increased.

Tr. 172. In January of 2004, she was switched to Cox-2 Inhibitors (Celebrex and Vioxx).[1] Tr. 170. X-ray studies in June of 2004 showed no advanced degenerative changes, but physical examination showed *functional but painful* range of motion, and *symptomatic* right patellar chondromalacia (sometimes called "housemaid's knee"). Tr. 173 [emphasis added].

All of this information would appear to be consistent with Dr. Dawson's findings of "mild level of limitation in her activities of daily living," and his determination that some job activities could be mildly affected, including "overall mobility, ability to stand and sit for long periods of time." Tr. 120. While the "five pound" limitation in Dr. Dawson's report would seem to be a transcription error, that matter is irrelevant at this juncture, since the sole question before us is whether substantial evidence supports the ALJ's conclusion that Ms. Coffman's arthritis imposed no exertional limitations on her ability to do basic work activities.

Furthermore, having found no physical restriction at all, the ALJ had no occasion to investigate any connection between pain and emotional disorder or cognitive processes. The Court notes that the Communicare records seem to raise the possibility of an interplay among her physical difficulties, her mental difficulties, and her motivation. See, e.g., Tr. 182, 192. While this may or may not have any significance for Ms. Coffman's claim, the legally erroneous determination at Step 2 prevented any exploration of the question.

Because of the sequential nature of the disability analysis, the focus here is necessarily quite narrow. On this appeal, the Court holds only that the ALJ's Step 2 determination – based on the medical records -- that arthritis imposed no limitations is not supportable by the medical

---

[1] We have no occasion to express any view as to whether the spring 2005 removal from the market of the Cox-2 inhibitors will bear on this case in any way on remand.

4

records viewed as a whole. The flaw introduced by that error makes it impossible to proceed to any larger "substantial evidence" inquiry, and the Court expresses no opinion regarding any examination of credibility or other fact-finding evaluations.

    An order in conformity has this day entered.